IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STROUGO, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>UNISYS CORPORATION, et al.,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 22-4529 |

**PAPPERT, J.**                                                                                               June 22, 2023

## MEMORANDUM

In this securities class action, John Connor wants the Court to appoint him lead plaintiff and his lawyers lead counsel. No other Plaintiff seeks to be lead plaintiff, and Connor's request is unopposed. The Court grants the Motion.

I

Unisys Corporation and its subsidiaries provide information technology services worldwide, including digital workplace solutions, cloud and infrastructure solutions, and enterprise computing solutions. (Compl. ¶ 2, ECF 1.) Plaintiffs allege that, between August 3, 2022 and November 7, 2022, Defendants made false or misleading statements to investors while failing to disclose pertinent information about the company's performance. (Compl. ¶ 1.) Strougo brings this action on behalf of a Class consisting of all those who purchased or otherwise acquired Unisys securities during that period. (*Id.* at ¶ 30.) The Class seeks remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. (*Id.* at ¶ 1.) Specifically, Unisys allegedly failed to disclose that: (1) the Company's 2022

1

financial guidance was significantly overstated; (2) it was likely that the Company would be required to negatively revise its 2022 financial guidance; (3) material weaknesses existed in the Company's "internal control" over financial reporting; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.  (*Id*. at ¶ 4).

On August 3, 2022, the company issued a press release to announce its results for the second quarter of 2022.  (*Id*. at ¶ 3.)  That press release stated, in relevant part: "[r]evenue growth is now expected to be in the range of (1.0)% to 1.0% YoY or in the range of 2.5 to 4.5% in constant currency.  The company now anticipates that non-GAAP operating profit margin will be between 7.5 to 9.0% and adjusted EBITDA margin in the range of 16.0 to 17.5%."  (*Id*.)

After the markets closed on November 7, 2022, Unisys issued another press release explaining that its previously stated 2022 financial guidance was lowered "by a significant margin" and that it would be "unable to file, . . .within the prescribed time period, its Quarterly Report on Form 10-Q for the quarter ended September 30, 2022." (*Id*. at ¶ 5.)  The Company also said it was "conducting an internal investigation regarding certain disclosure controls and procedures matters" and that "[f]ollowing the evaluation of the results of the investigation, the Company expects that it may determine that there are one or more material weaknesses in its internal control over financial reporting…"  (*Id*.)

After the news broke, Unisys's stock price fell $4.33 per share, or 48%, to close at $7.89 per share on November 8, 2022.  (*Id*. at ¶ 6.)  Strougo alleges he and other class members have suffered significant losses and damages as a result.  (*Id*. at ¶ 7.)

II

Under the Private Securities Litigation Reform Act, once a securities class action complaint is filed, plaintiff has twenty days to publish a notice informing class members about the suit. 15 U.S.C. § 78u-4(a)(3)(A)(i). This notice must warn class members that they have only sixty days to move to serve as lead plaintiff. *Id.* Those who wish to act as lead plaintiff must, among other things, list any other securities action in which they tried to serve as lead plaintiff in the past three years and certify that they did not buy the security at issue or join the class action at counsel's direction. *See id.* at § 78u-4(a)(2)(A).

Within ninety days of the notice publicizing the class action, the district court must consider any timely motions to be named lead plaintiff. *Id.* at § 78u-4(a)(3)(B)(i). The court must pick the person or group who will most "adequately represent the interest of class members." *Id.* Selecting a lead plaintiff is a two-step process. *See IN re Cendant Corp. Litig.,* 264 F.3d 201, 262–70 (3d Cir. 2001).

The first step is to identify the presumptive lead plaintiff. *See id.* at 262. To do so, a court begins by determining which movant has "the largest financial interest" in the suit. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The court then assesses whether that movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* In this context, Rule 23 requires only that the prospective lead plaintiff have claims that are "typical of the claims…of the class" and be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3), (4); *see Cendant,* 264 F.3d at 263. The initial inquiry into a movant's typicality and adequacy "need not be extensive." *Id.* at 264. Indeed, at this stage, the court should not consider

"arguments by [other] members of the purported plaintiff class." *Id.* at 263–64. If the movant with the largest financial interest makes a *prima facie* showing of typicality and adequacy, that movant is the presumptive lead plaintiff. *See id.* at 262–63. This inquiry is necessary even when the Motion is unopposed. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999).

Once the court appoints a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(V). Though "the lead plaintiff's right to select and retain counsel is not absolute," *Cendant*, 264 F.3d at 273, the court should defer to the lead plaintiff's selection so long as that selection is reasonable, *see id.* at 276. In assessing the chosen counsel, courts should consider, among other things, "the qualifications and experience of counsel" and the lead plaintiff's "legal experience and sophistication." *Id.* But "the ultimate inquiry is always whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." *Id.*

### III

### A

Connor's Motion is uncontested; no class member claims to have a larger financial interest. In assessing a movant's financial interest, courts look to (1) the number of shares purchased during the class period; (2) "the total net funds expended . . . during the class period; and (3) the approximate losses suffered." *Cendant*, 264 F.3d at 262. Connor purchased 25,360 shares of Unisys stock during the Class Period, expending $224,592.00 in net funds and losing $52,144.00. *See* (Mot. 4).

Connor attests that he is unaware of any other movant who has suffered greater loss during the Class Period. (*Id.*)  Here, there are no other movants at all.  Connor satisfies the largest financial interest requirement.

B

Connor similarly makes a *prima facie* showing of typicality.  *See Cendant*, 264 F.3d at 265 (framing the issue as "whether the movant has *preliminarily* satisfied the typicality requirement") (emphasis added).  Both Connor and the putative class "allege that Defendants violated the Exchange Act by failing to disclose material facts about the Company's business and operations," and Connor, like all putative class members, purchased shares during the Class Period and suffered losses during that time.  (Mot. 5.)  Connor's interests are closely aligned to those of the class, and his stated desire to lead the action on behalf of the Class thus satisfies typicality.

C

Rule 23's adequacy requirement seeks to guarantee that the movant with the greatest financial interest will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  A movant's choice of "competent class counsel" is "one of the best ways for a court to ensure that [the movant] will fairly and adequately represent the interests of the class.  *Cendant*, 264 F.3d at 265.  At bottom, the adequacy requirement aims to weed out movants without sufficient "sophistication and interest in the litigation…to function as an active agent for the class.  *Id*. at 266.

On first inspection, Connor satisfies this "initial adequacy assessment."  *Id.* at 265.  He is a "sophisticated investor" with fifteen years of investing experience.  (Mot. at 6.)  Connor is "partially retired" and holds two master's degrees in systems engineering

and software engineering, meaning he possesses the experience, time, and ability to dedicate the time required to adequately lead the class. His selection of experienced, successful counsel—Rosen Law—displays the prudence required of a lead plaintiff. This un-rebutted evidence makes a *prima facie* showing of Connor's adequacy.

## IV

The Court likewise approves Connor's chosen counsel. He has selected The Rosen Law Firm, P.A. as lead counsel for the class, and the firm has a local office. Rosen Law has been lead counsel or co-lead counsel in dozens of securities class actions throughout the nation and in this District. (Mot 7.) Rosen Law has substantial experience litigating issues similar to those here and has "obtained substantial recoveries on behalf of investors." (*Id* at 7; Ex. 4.) The firm has been "actively researching [Connor's] and the Class' claims, including reviewing publicly available financial [sic] and other documents while gathering information in support of Movant's claims against Defendants." (*Id*.) The Court has no reason to believe Connor failed to engage in "meaningful arms-length bargaining" with class counsel and is confident that Connor wisely and in good faith chose qualified and capable lawyers. *Cendant*, 264 F.3d at 276.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
