## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CONNOR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNISYS CORPORATION, PETER A. ALTABEF, DEBRA WINKLER MCCANN, and MICHAEL M. THOMSON,<br><br>Defendants. | Case No. 2:22-cv-04529-GJP<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Lead Plaintiff John Connor ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls, and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Unisys Corporation ("Unisys" or the "Company"), analysts' reports and advisories about the Company, interviews with former employees of Unisys, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased Unisys common stock between February 22,

2022 and November 7, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      During the Class Period, Unisys' Chief Executive Officer (CEO) and Chief Financial Officer (CFO) signed sworn certifications claiming that they designed and personally evaluated Unisys' disclosure controls and internal controls, and certified such controls as effective Unbeknownst to investors, however, Unisys' disclosure and internal controls suffered from critical weaknesses during the time periods covered by the certifications. Unisys's controls weaknesses were so severe that they rose to the level of a "material weakness," the most serious form of controls deficiency as defined under SEC rules. Once Unisys was forced to disclose that its Audit Committee was conducting an internal investigation into the Company's controls, Unisys's stock price plummeted by nearly 50%.

3.      Unisys is a technology solutions company that provides various information technology (IT) services and solutions - including digital communication, cybersecurity, and IT consulting – to clients around the world.

4.      As a publicly-traded company, Unisys is subject to the Sarbanes-Oxley Act of 2002 ("SOX").  Passed in the aftermath of massive accounting frauds at once venerable companies such as Enron, Tyco, and WorldCom, Congress intended for SOX to return personal accountability to the executives of publicly-traded companies. SOX requires that, as part of a company's public filings with the SEC, the CEO and CFO must certify that they have been involved in the process of designing, implementing, and evaluating the company's disclosure controls and procedures as well as internal controls over financial reporting. These certifications are known as "SOX Certifications."

5.      Effective disclosure and internal controls are critical to ensuring the reliability of a company's public disclosures. As part of the SOX Certification, the CEO and CFO attest to personally evaluating the effectiveness of the company's disclosure and internal controls – a task that cannot be delegated. SOX requires that this evaluation of controls be based on a "suitable, recognized control framework that is established by a body or group that has followed due-process procedures" in developing that framework.

6.      Unisys purportedly evaluated its internal controls based on the *Internal Control - Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO Framework"). The COSO Framework is the most widely used framework for evaluating internal controls in the United States.

7.      The COSO Framework identifies five "pillars" of internal control. One of the five pillars is "information and communication," *i.e.* whether there exists appropriate, consistent, and timely information distribution and communications to relevant stakeholders within the company.

8.      During the Class Period, Unisys filed an annual report on Form 10-K and two quarterly reports on Form 10-Q with the SEC. In these filings, Unisys stated that its disclosure and internal controls were effective. The annual and quarterly reports were accompanied by SOX Certifications from Defendants Altabef, Thomson, and McCann confirming to the investing public that they **designed** and **personally evaluated** Unisys' disclosure and internal controls, and found them to be effective.

9.      Contrary to Defendants' certifications and unbeknownst to investors, however, Unisys did not have effective controls in place during the Class Period. After the close of trading on November 7, 2022, Unisys disclosed that its Audit & Finance Committee was conducting an

internal investigation into the Company's disclosure controls and procedures, including the "dissemination and communication of information within certain parts of the organization."

10.     On this news, Unisys's stock price fell $4.33 per share, or by 48%, to close at $7.89 per share on November 8, 2022, damaging investors.  A securities analyst noted that "given that Unisys is a consulting firm that helps other companies get their IT departments organized and running, it's not a great look to have a problem within your own organization[.]"

11.     On November 21, 2022, Unisys announced that its internal investigation found that contrary to its express claims, the Company had not maintained effective disclosure and internal controls. Specifically, the investigation discovered that – contrary to Defendants Altabef's, Thomson's, and McCann's representations in their SOX Certifications – Unisys failed to design formal policies and procedures to ensure that information from the IT and legal & compliance departments were being communicated to other departments, including to the CEO and CFO, on a timely basis to allow for timely decision-making and disclosure.

12.     The controls deficiency was so severe that it rose to the level of a "material weakness."  A "material weakness" is the most serious form of controls deficiency, indicating that there existed a reasonable possibility that a material misstatement of the Company's annual or quarterly financial statements would not be prevented or detected on a timely basis.

13.     Indeed, the controls weaknesses were of such nature and severity that had Defendants Altabef, Thomson, and McCann carried out a good faith evaluation of the Company's controls - as they certified they had - they would not have found Unisys's controls to be effective. For example, Unisys disclosed that there were no written procedures in place to address the "proper handling of information" such that the Audit Committee and Security & Risk Committee are properly informed. This is despite the fact that the COSO Framework specifically identified

"information and communication" as one of the five pillars of internal controls. Additionally, Unisys disclosed that it did not have an adequate written policy for managing cyber incidents, which is glaring for an IT company. Cybersecurity is so important to a public company that the SEC recently promulgated rules requiring public companies to make annual disclosures regarding their cybersecurity risk management, strategy, and governance.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

16.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Unisys is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

17.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

18.     Plaintiff, as set forth in his Certification previously filed with the Court (ECF No.11-4), acquired Unisys common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

19.     Defendant Unisys is a Delaware corporation with principal executive offices located at 801 Lakeview Drive, Suite 100, Blue Bell, Pennsylvania 19422.  Unisys provides various IT services and solutions, including digital communication, cybersecurity, and IT consulting, to clients around the world. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "UIS."

20.     Defendant Peter A. Altabef ("Altabef") has served Unisys's Chair of the Board of Directors since 2018, and Chief Executive Officer since 2015.  He also served as the President of Unisys from December 2021 to May 2022.

21.     Defendant Debra Winkler McCann ("McCann") has served as Unisys's Chief Financial Officer since May 2, 2022.

22.     Defendant Michael M. Thomson ("Thomson") served as Unisys's Chief Financial Officer from 2019 until May 2, 2022, after which he became Unisys's President and Chief Operating Officer.

23.     Defendants Altabef, McCann, and Thomson are sometimes referred to herein as the "Individual Defendants."

24.     Unisys and the Individual Defendants are collectively referred to herein as "Defendants."

## DETAILED ALLEGATIONS OF MISCONDUCT

### Regulatory Background

25.     Public companies like Unisys are required to design "disclosure controls and procedures" and "internal controls over financial reporting" (together, "controls") to ensure that their representations to investors – both financial and non-financial – are accurate.  Disclosure controls and procedures mandate that information required to be disclosed by a company under

the Exchange Act is communicated to company management, including its CEO and CFO, sufficiently in advance of the company's filing dates to allow management sufficient time to consider and decide what information needs to be disclosed to the public.

26.    Internal controls over financial reporting are designed by or under the supervision of a company's CEO and CFO to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the company's financial statements in accordance with Generally Accepted Accounting Principles ("GAAP"), the common set of accounting principles, standards, and procedures that U.S. companies use to prepare their financial statements.

27.    Several statutes, regulations, and industry standards require Defendants to maintain adequate controls, and to certify that the controls they had in place were adequate.

28.    First, federal law requires that the CEO and CFO of public companies certify the company's quarterly and annual reports filed with the SEC, including the procedures established by the company to prepare its financial statements and disclosures.

29.    Specifically, Section 302 of SOX, 15 U.S.C. §7241 – meant to ensure that a public company's CEO and CFO take a proactive role in their company's public disclosure and to give investors confidence in the accuracy and reliability of a company's periodic SEC filings – require that a CEO and CFO of a public company address in their quarterly and annual SEC filings (Forms 10-Qs and 10-Ks, respectively): (1): the material accuracy and fair representation of the filing's disclosures; (2) establishment and maintenance of disclosure controls and procedures; and (3) deficiencies in, and material changes to, internal controls over financial reporting.  The CEO and CFO must certify that: (1) they have reviewed the filing; (2) it does not contain any untrue statements of material fact or omit to state a material fact necessary to make any statements not misleading; (3) based on their knowledge, the financial statements and other financial information

fairly present the financial conditions and operations of the company; (4) they have maintained disclosure controls and internal controls and have designed such controls to ensure that all material information is made known to them and to provide reasonable assurance regarding the reliability of financial information; and (5) they have disclosed to the audit committee and auditors all significant deficiencies and material weaknesses in the design or operation of internal controls.

30.    Thus, Section 302 imposes an affirmative obligation on a company to ensure that it has systems in place to safeguard the accuracy of its financial reporting. Furthermore, the internal controls must be "under the supervision of, the issuer's principal executive and principal financial officers."

31.    The requirement that the existence of controls be overseen by the CEO and CFO (or equivalents) is so important to the SOX scheme, that it also requires that those officers file public certifications, known as Section 302 Certifications, or SOX Certifications, whereby these officers must *personally* attest to their role in supervising the controls and the quality of those controls through an SEC provided form.  As relevant here, the most important sections of the SEC form are as follows:

(1) "The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures … and internal control … for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

\* \* \*

(2) The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information....

32.    Similarly, Section 404 of SOX, 15 U.S.C. §7262, requires that management of a public company annually evaluate the effective of the company's internal controls over financial reporting and disclose the conclusion to investors.  Further, this "evaluation" must be based on a "suitable, recognized control framework that is established by a body or group that has followed due-process procedures" in developing that framework.

33.     In sum, SOX strengthened the legal obligation to maintain effective controls and reaffirmed that the failure to have such controls itself is a serious violation of the law - a violation that does not depend on whether the lack of controls resulted in financial misstatements. Indeed, violations of SOX can result in significant fines and penalties regardless of whether a company is found to have misstated its financial results during the relevant period. Section 906 of SOX may also impose criminal penalties on executives for falsely certifying compliance with SOX.

34.     Second, Item 307 of SEC Regulation S-K, 17 CFR §229.307, requires that a company disclose the conclusion of its CEO and CFO regarding the effectiveness of the company' disclosure controls and procedures as of the end of the period covered by the periodic filing.

35.     Item 308 of SEC Regulation S-K, 17 CFR 17 CFR §229.308(a)(3), similarly requires that a company provide annual reports on the state of its internal controls over financial reporting containing a statement of management's responsibility for maintaining adequate internal controls, identifying the framework used by management to evaluate the effectiveness of the internal controls, and the assessment of the effectiveness of the internal controls.

36.     Third, the American Institute of Certified Public Accountants ("AICPA") make clear that: "The financial statements are management's responsibility…Management is responsible for adopting sound accounting policies and for establishing and maintaining internal controls that will, among other things, initiate, record, process, and report transactions (as well as events and conditions) consistent with management's assertions embodied in the financial statements." AICPA Professional Standards, AS §1001.03.

37.     According to SEC Release No. 33-8810, a "material weakness" in internal controls is a control deficiency so severe that there exists a reasonable possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or

detected on a timely basis.  A "significant deficiency," by contrast, is a deficiency in internal controls that is less severe than a material weakness, but important enough to merit attention by those at the company responsible for oversight of financial reporting. SEC Release No. 33-8829.

### Materially False and Misleading Statements Issued During the Class Period

***Unisys Repeatedly and Falsely Represented to Investors that its Controls were Effective***

38.    The Class Period begins on February 22, 2022, when Unisys filed its annual report on Form 10-K with the SEC for fiscal year 2021 (the "2021 10-K").

39.    The 2021 10-K included the following false statement regarding Unisys's disclosure controls:

> As of the end of the period covered by this Annual Report, management performed, with the participation of the Chief Executive Officer (CEO) and the Chief Financial Officer (CFO), an evaluation of the effectiveness of the company's disclosure controls and procedures as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934 (the Exchange Act)….***Based upon that evaluation, the CEO and the CFO concluded that, as of December 31, 2021, the company's disclosure controls and procedures were effective to provide reasonable assurance that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified by the SEC, and that such information is accumulated and communicated to management, including the CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure.[1]***

40.    This statement is false because Unisys admitted on November 21, 2022 that its disclosure controls and procedures had material weaknesses and therefore were not effective as of December 31, 2021, because Unisys "did not design and maintain effective formal policies and procedures over information being communicated by the IT function and the legal and compliance function to those responsible for governance, including the CEO and CFO, to allow timely decisions related to both financial reporting…and other non-financial reporting in the reports that the company files or submits under the Exchange Act."

---

[1] Unless otherwise noted, all emphases are added.

41.    The 2021 10-K included the following false statement about Unisys' internal controls:

> Management assessed the effectiveness of the company's internal control over financial reporting as of December 31, 2021, based on criteria established in *Internal Control - Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission. ***Based on this assessment, we concluded that the company maintained effective internal control over financial reporting as of December 31, 2021, based on the specified criteria.***

42.    This statement is false because Unisys admitted on November 21, 2022 that its internal control over financial reporting had material weaknesses and therefore was not effective as of December 31, 2021, because Unisys "did not design and maintain effective formal policies and procedures to ensure appropriate information is communicated from the IT function and the legal and compliance function to the accounting function and those responsible for governance on a timely basis so as to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles."

43.    Defendants Altabef and Thomson each signed the 2021 10-K.

44.    Defendants Altabef and Thomson also each signed sworn SOX Certifications attached to the 2021 10-K representing that:

4. The registrant's other certifying officer and I are ***responsible*** for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a. ***Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made***

**_known to us_** *by others within those entities*, particularly during the period in which this report is being prepared;

b. **_Designed_** such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, **_to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements_** for external purposes in accordance with generally accepted accounting principles;

c. **_Evaluated_** the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

a. **_All significant deficiencies and material weaknesses_** in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information;

45.     Defendants Altabef and Thomson's SOX Certifications were false because Unisys admitted on November 21, 2022 that the Company's: (a) disclosure controls and procedures and internal control over financial reporting were ***not effective*** as of the end of fiscal year 2021 (*i.e.* December 31, 2021), and that (b) the Company ***did not design*** and maintain effective formal policies and procedures to ensure that information from the IT and legal and compliance departments were communicated to relevant stakeholders, including the CEO and CFO, on a timely basis for financial and non-financial reporting purposes. Contrary to their SOX Certifications, Defendants Altabef and Thomson either (a) failed to evaluate, in good faith, Unisys' controls as claimed; or (b) knowingly provided false public assurances regarding Unisys' ineffective controls.

46.     On April 27, 2022, Unisys filed its quarterly report on Form 10-Q with the SEC for the first quarter of 2022 (the "1Q22 10-Q").

47.     The 1Q22 10-Q included the following false statement regarding Unisys's disclosure controls:

> The company's management, with the participation of the company's Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the Exchange Act)) as of the end of the period covered by this report. ***Based on this evaluation, the company's Chief Executive Officer and Chief Financial Officer concluded that, as of the end of such period, the company's disclosure controls and procedures are effective.***

48.     This statement is false because Unisys admitted on November 21, 2022 that its disclosure controls and procedures had material weaknesses and therefore were not effective as of the end of the first quarter of 2022, because Unisys "did not design and maintain effective formal policies and procedures over information being communicated by the IT function and the legal and compliance function to those responsible for governance, including the CEO and CFO, to

allow timely decisions related to both financial reporting…and other non-financial reporting in the reports that the company files or submits under the Exchange Act."

49.    Defendant Thomson signed the 1Q22 10-Q.

50.    Defendants Altabef and Thomson also each signed sworn SOX Certifications attached to the 1Q22 10-Q that:

4. The registrant's other certifying officer and I are ***responsible*** for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a. ***Designed such disclosure controls and procedures****, **or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries**, **is made known to us** **by others within those entities***, particularly during the period in which this report is being prepared;

b. ***Designed*** such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, ***to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements*** for external purposes in accordance with generally accepted accounting principles;

c. ***Evaluated*** the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

a. ***All significant deficiencies and material weaknesses*** in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information;

51.     Defendants Altabef and Thomson's SOX Certifications were false because Unisys admitted on November 21, 2022 that the Company's: (a) disclosure controls and procedures and internal control over financial reporting were ***not effective*** as of the end of the first quarter of 2022 (*i.e.* March 31, 2022), and that (b) the Company ***did not design*** and maintain effective formal policies and procedures to ensure that information from the IT and legal and compliance departments were communicated to relevant stakeholders, including the CEO and CFO, on a timely basis for financial and non-financial reporting purposes. Contrary to their SOX Certifications, Defendants Altabef and Thomson either (a) failed to evaluate, in good faith, Unisys' controls as claimed; or (b) knowingly provided false public assurances regarding Unisys' ineffective controls.

16

52.     On August 3, 2022, Unisys filed its quarterly report on Form 10-Q with the SEC for the second quarter of 2022 (the "2Q22 10-Q").

53.     The 2Q22 10-Q included the following false statement regarding Unisys's disclosure controls:

> The company's management, with the participation of the company's Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the Exchange Act)) as of the end of the period covered by this report. ***Based on this evaluation, the company's Chief Executive Officer and Chief Financial Officer concluded that, as of the end of such period, the company's disclosure controls and procedures are effective.***

54.     This statement is false because Unisys admitted on November 21, 2022 that its disclosure controls and procedures had material weaknesses and therefore were not effective as of the end of the second quarter of 2022, because Unisys "did not design and maintain effective formal policies and procedures over information being communicated by the IT function and the legal and compliance function to those responsible for governance, including the CEO and CFO, to allow timely decisions related to both financial reporting…and other non-financial reporting in the reports that the company files or submits under the Exchange Act."

55.     Defendant McCann signed the 2Q22 10-Q.

56.     Defendants Altabef and McCann each signed sworn SOX Certifications attached to the 2Q22 10-Q, representing that:

> 4. The registrant's other certifying officer and I are ***responsible*** for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> a. ***Designed such disclosure controls and procedures***, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material

***information relating to the registrant, including its consolidated subsidiaries, <u>is made known to us by others within those entities</u>***, particularly during the period in which this report is being prepared;

b. ***Designed*** such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, ***to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements*** for external purposes in accordance with generally accepted accounting principles;

c. ***Evaluated*** the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

a. *All significant deficiencies and material weaknesses* in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information;

57.     Defendants Altabef and McCann's SOX Certifications were false because Unisys admitted on November 21, 2022 that the Company's: (a) disclosure controls and procedures and internal control over financial reporting were *not effective* as of the end of the second quarter of 2022 (*i.e.* June 30, 2022), and that (b) the Company *did not design* and maintain effective formal policies and procedures to ensure that information from the IT and legal and compliance departments were communicated to relevant stakeholders, including the CEO and CFO, on a timely basis for financial and non-financial reporting purposes.    Contrary to their SOX Certifications, Defendants Altabef and McCann either (a) failed to evaluate, in good faith, Unisys' controls as claimed; or (b) knowingly provided false public assurances regarding Unisys' ineffective controls.

**The Truth Emerges**

58.     On November 7, 2022, after the close of trading, Unisys issued a press release disclosing that it would be unable to timely file its quarterly report for the quarter ended September 30, 2022 because "The Audit & Finance Committee of the Company's Board of Directors (the "Audit Committee") is conducting an internal investigation regarding certain disclosure controls and procedures matters, including, but not limited to, the dissemination and communication of information within certain parts of the organization."

59.     On this news, Unisys's stock price fell $4.33 per share, or 48%, to close at $7.89 per share on November 8, 2022, damaging investors.  An analyst writing for the Motley Fool, a private financial and investing advice company, observed that "Given that Unisys is a consulting

firm that helps other companies get their IT departments organized and running, it's not a great look to have a problem within your own organization" and that this "lack of trust is probably why the stock is down so much."

60.     On November 21, 2022, Unisys filed a Form 8-K with the SEC stating that the Audit Committee had concluded its investigation, and found that there were "material weaknesses" in the Company's disclosure controls and procedures and internal control over financial reporting. The material weaknesses related to "the design and maintenance of effective formal policies and procedures" over the timely communication of information from the IT and legal and compliance departments to those at the company responsible for governance, including the CEO and CFO. Accordingly, Unisys's "disclosure controls and procedures were not effective as of December 31, 2021, March 31, 2022 and June 30, 2022 and its internal control over financial reporting was not effective as of December 31, 2021." As a result, Unisys would need to amend its 2021 10-K, 1Q22 10-Q, and 2Q22 10-Q to state that the Company disclosure controls and procedures and internal control over financial reporting was not effective as of December 31, 2021, and that its disclosure controls and procedures were not effective as of the end of the first and second quarters of 2021.

61.     ***A material weakness is the most severe form of controls deficiency.*** As stated in SEC Release No. 33-8810, a material weakness is a deficiency, or a combination of deficiencies, in internal controls, such that it is reasonably possible that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.

62.     On November 23, 2022, Unisys filed its amended 2021 10-K (the "2021 10-K/A") to state that its disclosure controls and procedures and internal controls over financial reporting were not effective as of December 31, 2021.  On the same day, Unisys also filed an amended 1Q22

10-Q and amended 2Q22 10-Q to state that its disclosure controls and procedures were not effective as of the end of the first and second quarter of 2022.

## ADDITIONAL ALLEGATIONS DEMONSTRATING THAT THE INDIVIDUAL DEFENDANTS' SOX CERTIFICATIONS WERE AT MINIMUM RECKLESSLY FALSE

63.    In the 2021 10-K/A, Unisys provided a description of the remediation measures that it was planning to undertake to correct the controls materials weaknesses.  These remediation measures further reveal the severity of the controls problems and provide strong evidence that the Individual Defendants either did not undertake a good faith evaluation of controls, or falsely certified that controls were effective despite knowing that they were not.

64.    First, the revelation that Unisys would "provide training and policies (including any policy revisions) to non-finance executives regarding escalation of significant matters related to SEC reporting requirements" means that such training and policies were either non-existent or ineffective. Disclosure controls are intended to ensure that both financial and *non-financial* information is being timely communicated to relevant stakeholders within the company.  It is baffling that the Individual Defendants would certify that they've designed and evaluated controls (and found them effective) despite their failure to implement effective training and policies for non-financial executives to receive information regarding significant matters relating to SEC reporting requirements.

65.    Second, the revelation that Unisys would need to "enhance its written policy regarding information escalation for cyber-incidents" and "complete an assessment of staffing within the company's incident response team" means that (1) the policy for escalation of cyber incidents was inadequate, and (2) that in 2021 and the first two quarters of 2022, Unisys did not assess staffing within its incident response team.  Indeed, reporting and management of cyber incidents is so critical that the SEC recently adopted rules requiring companies to make annual

disclosures regarding their cybersecurity risk management, strategy, and governance. That Unisys – an IT company - lacked adequate policies for internal reporting of cyber incidents is particularly glaring. To conduct a good faith evaluation of controls, the Individual Defendants would and should have reviewed Unisys' policies for cyber incidents and reviewed the staffing of its incident response team.

66.    Third, the revelation that effective controls required Unisys to draft procedures to "address the proper handling of information so that the Security & Risk Committee and Audit Committee are properly informed" means that there were previously no procedures for communicating information to the Audit Committee and Security & Risk Committee. The Individual Defendants stated that they evaluated Unisys' internal controls using the COSO Framework, but one of the five pillars of the COSO Framework is "information and communication." Had the Individual Defendants conducted a good faith evaluation of controls under the COSO Framework, as they certified that they did, they would have found that there were no written procedures in place to address the reporting of information to the Audit Committee and the Security & Risk Committee.

67.    The personal involvement of the Individual Defendants in designing and evaluating controls also supports an inference of scienter. The Individual Defendants certified, through SOX Certifications, that they, among other things, were "responsible for establishing and maintaining" controls and "designed" or caused such controls to be designed under their supervision. The Individual Defendants also certified that they personally evaluated Unisys's controls for each reporting period. That the Individual Defendants repeatedly made statements regarding an issue of specific personal interest supports scienter.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities who purchased Unisys common stock during the Class Period (the "Class"), and were damaged upon the revelation of the alleged corrective disclosure.  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

69.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Unisys common stock actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Unisys or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

70.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

71.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

72.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Unisys;

- whether the Individual Defendants caused Unisys to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Unisys common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

73.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

74.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine because the market for Unisys common stock was an efficient market at all relevant times for the following reasons, among others:

- Unisys' common stock met the requirements for listing, and was listed an actively traded on the NYSE, a highly efficient and automated market;

- As a regulated issuer, Unisys filed periodic public reports with the SEC and NYSE;

24

- Unisys regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Unisys was followed by several securities analysts employed by major brokerage firms, including Canaccord Genuity and Maxim Group, who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

75.     As a result of the foregoing, the market for Unisys's common stock promptly digested current information regarding Unisys from all publicly available sources and reflected such information in the price of Unisys's common stock. Under these circumstances, all purchasers of Unisys's common stock during the Class Period suffered similar injury through their purchase of Unisys common stock at artificially inflated prices and the presumption of reliance applies.

76.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

77.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

79.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of Unisys common stock.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Unisys common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Unisys common stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

80.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Unisys common stock.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Unisys's finances and business prospects.

81.    By virtue of their positions at Unisys, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made,

although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

82. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Unisys, the Individual Defendants had knowledge of the details of Unisys's internal affairs.

83. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Unisys. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Unisys common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Unisys's business conditions which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Unisys common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

84. During the Class Period, Unisys common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Unisys common stock at prices artificially inflated by Defendants' wrongful conduct. Had

Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Unisys common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Unisys common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

85.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

86.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

87.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.    During the Class Period, the Individual Defendants participated in the operation and management of Unisys, and conducted and participated, directly and indirectly, in the conduct alleged herein.

89.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Unisys's business and operations, and to correct promptly any public statements issued by Unisys which had become materially false or misleading.

90.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Unisys disseminated in the marketplace during the Class Period concerning Unisys.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Unisys to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Unisys within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Unisys common stock.

91.     Each of the Individual Defendants, therefore, acted as a controlling person of Unisys.  By reason of their senior management positions and/or being directors of Unisys, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Unisys to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Unisys and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

92.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Unisys.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  August 21, 2023                     Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            */s/ Yu Shi*_____
                                            Yu Shi (Admitted *Pro Hac Vice*)
                                            **THE ROSEN LAW FIRM, P.A.**
                                            275 Madison Ave, 40th Floor
                                            New York, NY 10016
                                            Tel: (212) 686-1060
                                            Fax: (212) 202-3827
                                            yshi@rosenlegal.com

                                            Jacob A. Goldberg (PA Bar No: 66399)
                                            **THE ROSEN LAW FIRM, P.A.**
                                            101 Greenwood Ave, Suite 440
                                            Jenkintown, PA 19046
                                            Tel: (215) 600-2817
                                            Fax: (212) 202-3827
                                            jgoldberg@rosenlegal.com

                                            *Attorneys for Lead Plaintiff*
                                            *John Connor*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*<u>/s/Yu Shi</u>*
Yu Shi