IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CONNOR, *individually and on behalf of all others similarly situated,*<br><br>      *Plaintiff,*<br><br>   v.<br><br>UNISYS CORPORATION, et al.,<br><br>      *Defendants.* | CIVIL ACTION<br>NO. 22-4529 |

**Pappert, J.**                                                 **February 1, 2024**

### MEMORANDUM

John Connor sued Unisys Corporation and select officers (the Individual Defendants) on behalf of a class consisting of all persons and entities who acquired Unisys common stock between February 22, 2022 and November 7, 2022 (the class period) and were harmed by a decline in the company's stock price. The Court previously appointed Connor lead plaintiff. *Strougo v. Unisys Corp.*, No. 22-4529, 2023 WL 4140822, 2023 U.S. Dist. LEXIS 107805 (E.D. Pa. June 22, 2023). Connor then filed an Amended Complaint (ECF No. 22).

Connor alleges that contrary to Defendants' representations, material weaknesses existed in Unisys's internal control over financial reporting and its disclosure controls and procedures. Once Unisys disclosed that its audit committee was conducting an internal investigation into these purported shortcomings, the price of Unisys's common stock fell by nearly 50%. Connor contends Defendants' earlier statements about the effectiveness of its controls were materially false and misleading and violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule

10b-5 promulgated thereunder.  Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), contending Connor has failed to adequately allege falsity, scienter and loss causation.  The Court grants the motion, though Connor will be allowed to amend his Complaint again if he can cure the deficiencies discussed below.

I

A

The Sarbanes-Oxley Act of 2002 requires a public company's CEO and CFO to execute certifications that are filed with the company's financial reports, such as its Forms 10-K and 10-Q.[1]  *Hall v. Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 231 (S.D.N.Y. 2008); 15 U.S.C. § 7241.  SEC regulations require these "SOX Certifications" to be made "exactly as set forth" in a standard form.  17 C.F.R. § 229.601(b)(31).  The officers are required to certify that they have designed, or caused to be designed under their supervision, "disclosure controls and procedures" as well as "internal control over financial reporting," and evaluated their effectiveness.  *Id.* § 229.601(b)(31)(i); 15 U.S.C. § 7241(4).

They must further certify they have disclosed to the company's auditors and audit committee "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information."  17 C.F.R. § 229.601(b)(31)(i)(5).  A material weakness is a deficiency or combination of deficiencies in internal control "such that there is a

---

[1]      Forms 10-K are filed annually while Forms 10-Q are filed quarterly.  *See City of Miami Fire Fighters' & Police Officers' Ret. Trust v. CVS Health Corp.*, 46 F.4th 22, 27 n.3 (1st Cir. 2022).

reasonable possibility that a material misstatement of the registrant's annual or interim financial statements will not be prevented or detected on a timely basis." *Commission Guidance Regarding Management's Report on Internal Control Over Financial Reporting Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934*, Release No. 33-8810, 72 Fed. Reg. 35324, 35326 n.18 (June 27, 2007).  Finally, the company must provide an annual report containing a statement of management's responsibility for establishing and maintaining internal control and identifying the framework management used to evaluate its effectiveness.  17 C.F.R. §§ 229.308(a); 240.13a-15; 240.15d-15.

B

1

Unisys is a publicly traded company that provides IT services and solutions, such as digital communication, cybersecurity and IT consulting.  (Am. Compl. ¶ 19.) The Company's CEO is Peter A. Altabef and its CFO is Debra Winkler McCann.  (*Id.* ¶¶ 20-21.)  Michael M. Thomson served as Unisys's CFO until May 2022.  (*Id.* ¶ 22.)

Connor claims Unisys and the Individual Defendants made several false or misleading statements during the class period.  First, Unisys filed its annual report on SEC Form 10-K for the 2021 fiscal year, and Altabef and Tomson each signed it.  (*Id.* ¶¶ 38, 43.)  The Form 10-K stated that management, with Altabef and Thomson's participation, evaluated the effectiveness of Unisys's disclosure controls and procedures.  (*Id.* ¶ 39.)  Altabef and Thomson concluded that as of December 31, 2021, these controls and procedures were:

> effective to provide reasonable assurance that information required to be
> disclosed in our Exchange Act reports is recorded, processed, summarized and

3

reported within the time periods specified by the SEC, and that such information is accumulated and communicated to management, including the CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure.

(*Id.*)  The 2021 10-K further stated:

> Management assessed the effectiveness of the company's internal control over financial reporting as of December 31, 2021, based on criteria established in *Internal Control-Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on this assessment, we concluded that the company maintained effective internal control over financial reporting as of December 31, 2021, based on the specified criteria.

(*Id.* ¶ 41.)  The COSO Framework is "the most widely used framework for evaluating internal controls in the United States."  (*Id.* ¶ 6.)

In late April 2022, Unisys filed its quarterly report on SEC Form 10-Q, which Thomson signed.  (*Id.* ¶¶ 46, 49.)  The first quarter Form 10-Q stated that management, with Thomson and Altabef's participation, had "evaluated the effectiveness of the company's disclosure controls and procedures."  (*Id.* ¶ 47.)  "Based on this evaluation," Altabef and Thomson concluded these controls and procedures were effective.  (*Id.*)  In August, Unisys filed its Form 10-Q for the second quarter, which McCann, now the CFO, signed.  (*Id.* ¶¶ 52, 55.)  This Form contained the same statement as its first quarter counterpart.  (*Id.* ¶ 53.)

Unisys's Form 10-K and both Forms 10-Q were accompanied by sworn SOX Certifications.  Altabef and Thomson signed the certifications attached to the Form 10-K and first quarter Form 10-Q and Altabef and McCann signed the certification attached to the second quarter Form 10-Q.  (*Id.* ¶¶ 44, 50, 56.)  The SOX Certifications stated that the signing officers had, among other things:

> a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated

subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

(*Id.*)  The SOX Certifications further stated that the signing officers had disclosed to the Company's auditors and the Board of Directors' Audit Committee "all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the [Company's] ability to record, process, summarize and report financial information."  (*Id.*)

2

On November 7, 2022, Unisys issued a press release stating it would be unable to file its third quarter report because the Board's Audit Committee was conducting an internal investigation "regarding certain disclosure controls and procedures matters, including, but not limited to, the dissemination and communication of information within certain parts of the organization."  (*Id.* ¶ 58.)  The next day, Unisys's stock price fell 48%, which one analyst attributed to this announcement.  (*Id.* ¶ 59.)

Two weeks later, Unisys filed a Form 8-K with the SEC announcing the investigation's results. (*Id.* ¶ 60.) The Audit Committee found material weaknesses in the Company's disclosure controls and procedures and internal control over financial reporting. (*Id.*) These weaknesses related to "the design and maintenance of effective formal policies and procedures" governing the timely communication of information from the IT and legal and compliance departments to company governance, including the CEO and CFO. (*Id.*) These controls and procedures were therefore not effective, and Unisys needed to amend its Forms 10-K and 10-Q accordingly. (*Id.* ¶¶ 60-62.)

When it amended these forms, Unisys announced proposed corrective action. (*Id.* ¶ 63.) These measures included "provid[ing] training and policies (including any policy revisions) to non-finance executives regarding escalation of significant matters related to SEC reporting requirements," enhancing the Company's written policy regarding "information escalation for cyber-incidents," and assessing the incident response team's staffing. (*Id.* ¶¶ 64-65.) Finally, Unisys would draft procedures to "address the proper handling of information so that the Security & Risk Committee and Audit Committee are properly informed." (*Id.* ¶ 66.)

3

Connor alleges Defendants' conclusions that the Company's controls and procedures were effective ("the conclusion statements") and their statements that they evaluated the controls' effectiveness ("the process statements") were false. "[T]he Individual Defendants either did not undertake a good faith evaluation of controls, or falsely certified that controls were effective despite knowing that they were not." (*Id.* ¶ 63.) He believes the remedial measures Unisys announced prove this is the case.

He contends, for example, that Unisys's plan to draft procedures to ensure the Security & Risk and Audit Committees were properly informed must mean "that there were previously no procedures for communicating information" to these committees. (*Id.* ¶ 66.)  Similarly, Connor contends Defendants did not evaluate Unisys's internal controls under the COSO Framework, because if they had done so, they would have discovered "that there were no written procedures in place to address the reporting of information" to the Audit and Security & Risk Committees.  (*Id.*)  He alleges Defendants either had "actual knowledge" these statements were false or acted with "reckless disregard for the truth" by failing to ascertain the information that would reveal their falsity.  (*Id.* ¶ 81.)

Connor alleges that these false statements "artificially inflated" Unisys's stock price.  (*Id.* ¶ 84.)  Had he and other class members known the truth, they either would not have purchased or acquired Unisys stock or would not have done so at inflated prices.  (*Id.*)

In Count One, Connor claims Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 by engaging in a scheme to artificially inflate and maintain Unisys's stock price and induce people to purchase shares at inflated prices.  (*Id.* ¶¶ 77-86.)  In Count Two, Connor claims the Individual Defendants violated Section 20(a) of the Exchange Act as "controlling persons" at Unisys.  (*Id.* ¶¶ 87-92.)  "[L]iability under Section 20(a) is derivative of an underlying violation of Section 10(b)," so if any Section 10(b) claim fails, the corresponding Section 20(a) claim will too.  *See Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252, 280 (3d Cir. 2009).

II

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).  A pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quotations omitted).  In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

III

Together, Section 10(b) and Rule 10b-5 "imply a private cause of action for securities fraud." *City of Warren Police & Fire Ret Sys. V. Prudential Fin., Inc.*, 70 F.4th 668, 679 (3d Cir. 2023).  To state a claim under these provisions, plaintiffs must allege "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4)

reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *In re Hertz Global Holdings, Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (quoting *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014).

Securities fraud plaintiffs must also meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act. *City of Warren*, 70 F.4th at 680. Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, they must describe the "time, place[] and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren*, 70 F.4th at 680. In other words, Rule 9(b) requires "the who, what, when, where and how" of the fraud. *Avaya*, 564 F.3d at 253 (quotation omitted).

The PSLRA imposes additional pleading requirements for the first two elements of a Section 10(b) and Rule 10b-5 claim. *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 662 (E.D. Pa. 2021). First, to plead falsity, a plaintiff must "identify each statement alleged to have been misleading and . . . specify the reason or reasons why the statement is misleading." *City of Warren*, 70 F.4th at 680 (internal quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)(1)). And if any of those allegations of falsity are based on information and belief, the complaint must "plead, with particularity, facts 'sufficient to support a reasonable belief as to the misleading nature of the statement or omission.'" *Id.* (quoting *Cal Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004)); *see also* 15 U.S.C. § 78u-4(b)(1). Second, to plead scienter, the plaintiff must "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind." *Hertz Global Holdings*, 905 F.3d at 114 (quoting 15 U.S.C. § 78u-4(b)(2)(A)).  Failure to satisfy these heightened pleading requirements "justifies dismissal apart from Rule 12(b)(6)." *Chubb*, 394 F.3d at 145.  Under this "modified" analysis, "catch-all or blanket assertions that do not comply with the particularity requirements are disregarded." *Id.* (internal quotation marks omitted).  Courts may take judicial notice of matters of public record, including SEC filings and documents "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotation omitted).

Defendants believe Connor has not plausibly alleged falsity, scienter and loss causation for each misstatement alleged in the Amended Complaint.  These alleged misstatements can be grouped into two categories for purposes of analyzing the Amended Complaint's sufficiency: (1) Defendants' description of how they designed and evaluated Unisys's controls ("process statements"); and (2) Defendants' statements that Unisys's controls were effective ("conclusion statements").

IV

Defendants first contend Connor has not pled falsity because he has not alleged any misstatements or omissions of material fact, only statements of opinion.  (Defs.' Mem. in Supp. of Mot. to Dismiss 16-18, ECF No. 28-1.)[2]  This distinction is important because opinions ordinarily do not constitute statements or omissions of "material fact," an "essential element[]" of claims brought under Section 10(b) and Rule 10b-5.  *City of Warren*, 70 F.4th at 679, 684-86.  Opinions are only actionable if the speaker did not

---

[2]      Page numbers are those assigned by ECF unless otherwise specified.

believe the statement when they made it, the opinion contains an expressly embedded false fact, or it reasonably implies untrue but omitted facts.  *Id.* at 685.

A fact is "a thing done or existing or an actual happening," while "an opinion is "a belief, a view, or a sentiment which the mind forms of persons or things."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (cleaned up) (quotations omitted).  A fact "expresses certainty about a thing" while a statement of opinion does not.  *Id.* (comparing "the coffee is hot" with "I think the coffee is hot").  Defendants assert Connor alleges only statements of opinion while Connor believes that while the "conclusion statements" are opinions, the "process statements" are statements of fact.  (Pl.'s Mem. in Opp. to Mot. to Dismiss 2, 12-16, ECF No. 30.)

A

As Connor acknowledges, the conclusion statements are opinions.  *See* (Pl.'s Mem. 13, 16.)  Statements in SOX Certifications and Forms 10-K and 10-Q regarding the effectiveness of a company's procedures "signal that they are opinions by stating that they are based on the knowledge of the officer."  *New England Carpenters Guar. Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 176 (2d Cir. 2023) (cleaned up); *see also In re Amtrust Fin. Servs., Inc. Sec Litig.*, No. 17-1545, 2019 WL 4257110, 2019 U.S. Dist. LEXIS 153297, at *72-73 (S.D.N.Y. Sept. 9, 2019) (Statements in Forms 10-K and SOX Certifications almost identical to those made by Defendants are "statements of opinion" because they "concern the conclusions of management"), *aff'd in part, vacated in part on other grounds sub nom. DeCarlo*, 80 F.4th 158 (2d Cir 2023).

B

Connor argues the process statements are "statements of verifiable fact" that policies were designed and that internal controls were evaluated in a specific way. (Pl.'s Mem. 13.)  The Individual Defendants "either did or did not design formal polices to ensure that information was being communicated from Unisys['s] IT and legal & compliance departments to other departments on a timely basis, and [they] either did or did not evaluate internal controls based on the COSO Framework."  (*Id.*)

Process statements are sometimes statements of fact.  Statements about compliance with a methodology that has an "objective application" are statements of fact, while statements about the application of a methodology that is "inherently subjective" are opinions.  *In re Hertz Global Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017 WL 1536223, 2017 U.S. Dist. LEXIS 65156, a *34-36 (D.N.J. Apr. 7, 2017) (some GAAP standards have objective application while others require subjective judgments), *aff'd* 905 F.3d 106 (3d Cir. 2018); *see also In re Phillip Morris Int'l Inc.*, 89 F.4th 408, 418-19 (2d Cir. 2023) (whether statements about compliance with "Good Clinical Practice" are opinions or factual statements depends on whether they were "inherently subjective" or "objective"); *but see Miller Inv. Trust v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 430-31 (D. Mass. 2018) (auditors' statements about their compliance with PCAOB or GAAS standards are factual even though their application involves "the exercise of discretion" since "there is sufficient uniformity that a fact-finder may assess compliance using a reasonable person standard").

1

Connor claims two statements are factual, but his purported theory conflates

opinion and fact.  In reality, he takes issue with opinions.  One of these statements,

appearing in the SOX Certifications, alleges that Altabef and Thomson:

> [d]esigned such disclosure controls and procedures, or caused such disclosure
> controls and procedures to be designed under our supervision, to ensure that
> material information relating to the registrant, including its consolidated
> subsidiaries, is made known to us by others within those entities . . .

(Am. Compl. ¶¶ 44, 50, 56.)  Another, appearing in the same place, says Altabef and

Thomson:

> [d]esigned such internal control over financial reporting, or caused such internal
> control over financial reporting to be designed under our supervision, to provide
> reasonable assurance regarding the reliability of financial reporting and the
> preparation of financial statements for external purposes . . .

(*Id.*)  Connor contends these statements are false because Unisys "later admitted that

Defendants actually failed to design formal policies and procedures to ensure that

information from the IT and legal and compliance departments were being

communicated to other departments on a timely basis for decision-making and required

reporting purposes."  (Pl.'s Mem. 15); *see also* (Am. Compl. ¶¶ 11, 60.)  But this is an

attack on the policies and procedures' effectiveness, not a contention that Defendants

designed no policies or procedures at all.  Unisys's internal investigation revealed "the

Company had not maintained *effective* disclosure and internal controls."  (Am. Compl. ¶

11) (emphasis added).  Defects existed that affected timely communication of

information from the IT, legal and compliance departments to management, such that

the Company's controls were "not *effective*."  (*Id.* ¶¶ 11, 60) (emphasis added).

13

Adopting Connor's theory would conflate opinions and factual statements. Conclusions about the controls' effectiveness are just that, conclusions. As such, they are statements of opinion. *See DeCarlo*, 80 F.4th at 176. Connor cannot invert this rule by framing ineffectiveness as nonexistence.

2

Connor next argues that some statements appearing in Unisys's Form 10-K are statements of fact. He points to the statement that:

"Management assessed the effectiveness of the company's internal control over financial reporting as of December 31, 2021, based on criteria established in *Internal Control - Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on this assessment, we concluded that the company maintained effective internal control over financial reporting as of December 31, 2021, based on the specified criteria."

(Am. Compl. ¶ 41.) Connor alleges this statement is false because the nature of Unisys's problems with its internal controls makes clear the Individual Defendants did not faithfully apply the COSO Framework, as they said they did. (*Id.* ¶ 66.) Defendants argue this statement is an opinion because the question of whether Unisys's review procedures were sufficiently "based on criteria established in the [COSO Framework]" is an inherently subjective inquiry. (Defs.' Reply to Pl.'s Mem. 12, ECF No. 31.) But none of this really matters because, as explained below, Connor fails to adequately allege this statement is false.

V

Connor fails to "articulate[] the reason for each statement's falsity." *See City of Warren*, 70 F.4th at 682. To plausibly allege falsity, Connor must "'identify Defendants' allegedly false and misleading statements with particularity' *and* specify with

particularity the 'true facts' that demonstrate how each statement or omission was indeed false or misleading at the time [it] was made." *In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 588 (E.D. Pa. 2023) (quoting *Chubb*, 394 F.3d at 145); *see also Williams v. Globus Med., Inc.*, 869 F.3d 235, 244 (3d Cir. 2017). Alleging "true facts" generally requires "citing contemporaneous sources," rather than relying on "conjecture based on subsequent events." *Williams*, 869 F.3d at 244. Such facts are traditionally pled by "relying on confidential witnesses or documentary evidence such as internal memoranda to establish" why a statement was false "at the time it was made." *Ocugen*, 659 F. Supp. 3d at 589. Factual allegations "cannot rely exclusively on hindsight, but must be sufficient to show that the challenged statements were actionably unsound when made." *Williams*, 869 F.3d at 244 (quotation omitted).

A

Again, Connor contends that Altabef and Thomson's statement that management assessed the Company's internal controls based on the COSO Framework is false. In addition to alleging this is a false statement of fact, he also relies on this allegation to attack the truthfulness of the "conclusion statements." Conceding these statements are opinions, Connor contends they are nonetheless actionable false statements because they were predicated on the false representation that Defendants "conducted a good faith assessment of internal controls under the COSO Framework." (Pl.'s Mem. 16); *see also* (Am. Compl. ¶¶ 13, 45, 51, 57, 66.) In order to plausibly allege the conclusion statements are false, Connor still needs to plausibly show that management failed to conduct the assessment they said they did.

15

Connor does not adequately do so.  He contends that since one of Unisys's remedial measures involved drafting procedures to "address the proper handling of information so that the Security & Risk Committee and Audit Committee are properly informed," the Company must have previously had no procedures for communicating information to these Committees.  (Am. Compl. ¶ 66.)  Therefore, the Individual Defendants could not have actually used the COSO Framework, since one of the Framework's "five pillars" is "'information and communication,' *i.e.* whether there exists appropriate, consistent[] and timely information distribution and communications to relevant stakeholders within the company."  (*Id.* ¶ 6, 66.)  Had they conducted "a good faith evaluation of controls" under this Framework, Connor concludes, they would have discovered the deficiencies in the Company's controls in the first instance. (*Id.* ¶ 66.) He similarly relies on Unisys's plans to provide additional training, enhance written policies and assess staffing, asserting Defendants "would and should have" detected these deficiencies earlier if they conducted a "good faith evaluation."  (Am. Compl. ¶¶ 64-66); (Pl.'s Mem. 16-17.)

This is a speculative conclusion, accompanied by no additional explanation or supporting facts.  It also lacks even basic information about how the COSO Framework works, or why its good faith application would have rendered implausible the Defendants' conclusions that Unisys maintained effective control over financial reporting.  Connor's theory that "[h]ad the defendants properly used the COSO framework as they claimed, they would have known about the accounting errors alleged herein on a timely basis" constitutes "impermissible fraud by hindsight." *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1044 (6th Cir. 2016); *see also Doshi v. Gen. Cable Corp.*, No.

14-22, 2015 WL 2229233, 2015 U.S. Dist. LEXIS 61686, at *12-13 (E.D. Ky. May 12, 2015) (describing the same allegations as "conclusory statements and speculation"), *aff'd* 823 F.3d 1032 (6th Cir. 2016).  The same goes for his more general contention that the evaluation was not a "good faith" one.

Although "later developments may allow a reasonable inference that prior statements were untrue or misleading when made," *City of Warren*, 70 F.4th at 693, the Court "cannot credit factual allegations, such as this, which do not rise above the speculative level." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 883 (3d Cir. 2018) (quotation omitted); *see also Johnson v. Costco Wholesale Corp.*, No. 18-1611, 2020 WL 4816225, 2020 U.S. Dist. LEXIS 150355, at *14 n.15 (W.D. Wash. Aug. 19, 2020) (complaint's citation to a list of required "oversight activities" in Costco's COSO Framework fails to "allege with particularity that Defendants failed to perform the list of required oversight activities").  The Amended Complaint does not allege specific facts about "the inquiry the issuer did or did not conduct." *See Omnicare*, 575 U.S. at 194.  It instead relies on "conjecture based on subsequent events." *Williams*, 869 F.3d at 244.

### B

Connor's claims that the conclusion statements are false fare no better.  Although these statements are opinions, "they may still be false or misleading." *City of Warren*, 70 F.4th at 684.  Opinions may be false or misleading in three scenarios.  First, because every statement of opinion "explicitly affirms one fact: that the speaker actually holds the stated belief," an insincere statement of opinion is a misrepresentation. *Id.* at 685 (quoting *Omnicare*, 575 U.S. at 184).  In other words, it is a misrepresentation to

"falsely describe [one's] own state of mind." *Omnicare*, 575 U.S. at 184-85.  Second, if

an opinion statement contains an "expressly embedded factual assertion[]," the

statement is misleading "if any of the embedded factual assertions are untrue." *City of*

*Warren*, 70 F.4th at 685 (internal quotation marks omitted) (citing *Omnicare*, 575 U.S.

at 184-85).  Finally, if an opinion, under the circumstances in which it is given,

"reasonably implies facts that are untrue," it is misleading unless accompanied by "a

qualifying statement regarding those facts." *Id.* (citing *Omnicare*, 575 U.S. at 188-89).

Opinions may be misleading by omission because reasonable investors may, in some

circumstances, "understand an opinion statement to convey facts about how the

speaker has formed the opinion." *Omnicare*, 575 U.S. at 188.[3]  Again, Connor believes

the conclusion statements are actionable under the second and third *Omnicare* theories.

(Pl.'s Mem. 16.)

C

Connor argues the conclusion that Unisys's internal and disclosure controls and

procedures were effective "contains the embedded fact that a good faith evaluation was

performed to arrive at that conclusion."  (*Id.*)  This argument duplicates his claim that

the Individual Defendants did not actually conduct the evaluation they claimed they

did.  But Connor fails to adequately allege this embedded fact is untrue, precluding the

statements from being actionable under an embedded factual assertions theory.

Connor next contends these statements are actionable under *Omnicare*'s "falsity-

by-omission scenario".  *See City of Warren*, 70 F.4th at 686.  Again, Connor claims that

---

[3]      While *Omnicare* addressed the issue of when opinions can be false or misleading in cases arising under Section 11 of the Securities Act of 1933, 15 U.S.C. §77a *et seq.*, "*Omnicare*'s framework for evaluating opinion falsity [also] applies to claims under [Section] 10(b) for violations of Rule 10b-5." *City of Warren*, 70 F.4th at 685.

these conclusions "omitted critical context regarding Defendants' lack of inquiry." (Pl.'s
Mem. 16.)  This theory fails for the same reason as the last one.  Connor believes
Unisys's remedial measures prove that Defendants could not have conducted a good
faith evaluation of the company's controls and procedures.  But the existence of these
remedial measures, without more, is insufficient to render Defendants' conclusion
actionable.  Connor only attempts to do so "by means of conclusory assertions" based on
hindsight.  *See Omnicare*, 575 U.S. at 194; *City of Warren*, 70 F.4th at 693.  He has not
alleged "facts about the inquiry the issuer did or did not conduct or the knowledge it did
or did not have—whose omission makes the opinion statement at issue misleading to a
reasonable person reading the statement fairly and in context."  *Omnicare*, 575 U.S. at
194.

## VI

Defendants also contend Connor's claims do not give rise to the requisite strong
inference of scienter.  (Defs.' Mot. 24-31.)  Specifically, they argue Connor has neither
alleged Defendants had any motive to commit fraud nor committed any "conscious
misbehavior or recklessness."  (*Id.* at 25-30.)  Connor, appearing to concede he has not
adequately alleged a motive to commit fraud, responds that he has sufficiently alleged
recklessness.  (Pl.'s Mem. 19-22.)

### A

To plead scienter, Connor must "allege facts giving rise to a strong inference of
either reckless or conscious behavior."  *Avaya*, 564 F.3d at 267 (internal quotation
marks omitted) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534-35 (3d Cir.
1999), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308 (2007)). A "strong inference" is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* (quoting *Tellabs*, 551 U.S. at 314. The relevant inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Avaya*, 564 F.3d at 267-68 (quoting *Tellabs*, 551 U.S. at 322-23). This analysis rests on "a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter." *Id.* at 269.

Reckless statements involve "not merely simple, or even inexcusable negligence," but an "extreme departure from the standards of ordinary care" and present a danger of misleading buyers or sellers that is "either known to the defendant or is so obvious that the actor must have been aware of it." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013). Securities fraud claims "typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." *In re Campbell Soup Co Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (quoting *Novak v. Kasaks*, 215 F.3d 300, 308 (2d Cir. 2000)).

But allegations that a defendant "because of his position in the company, must have known a statement was false or misleading are precisely the types of inferences which courts, on numerous occasions, have determined to be inadequate." *Id.* (cleaned up) (quoting *Advanta*, 180 F.3d at 539). "Generalized imputations of knowledge do not suffice." *Advanta*, 180 F.3d at 539. More specifically, "[a]n allegation that a defendant signed a SOX certification attesting to the accuracy of an SEC filing that turned out to

be materially false does not add to the scienter puzzle" unless the defendant knew the filing was false or recklessly disregarded inaccuracies in the filing. *Hertz Global Holdings*, 905 F.3d at 118.

Connor's allegations and arguments here are of the same ilk. Since the Individual Defendants were "personally responsible" for designing disclosure and internal controls or supervising their design, any statements they made about their design "were made on the basis of personal knowledge." (Pl.'s Mem. 20.) They had a "duty to know whether they were getting the information they needed," and certified that they were. (*Id.* at 21.) Since the COSO Framework required Defendants to "evaluate whether information was being communicated to them on a consistent and timely basis," they either knew they were not receiving this information or chose to "remain ignorant." (*Id.*)

B

This is all speculation. Although Connor believes Defendants "had access to contrary facts," he does not identify any "reports or statements containing this information," relying instead on conjecture. *See Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 673-74 (D.N.J. 2021). While Defendants' role in "designing and evaluating the internal controls is relevant to the inquiry," Connor does not specifically allege they were "aware of at least some problems with internal controls." *See Dobina v. Weatherford Int'l*, 909 F. Supp. 2d 228, 246-47 (S.D.N.Y. 2012) (complaint adequately alleged defendant who participated in designing and evaluating internal controls knew they were not effective where a confidential witness allegedly told the defendant about

21

control issues and Tax Department audits revealed deficiencies that were "expressly raised" with that defendant).

Defendants' later admission of error "is insufficient by itself to give rise to a strong inference of scienter." *Hertz Global Holdings*, 905 F.3d at 116 (quoting *Podraza v. Whiting*, 790 F.3d 828, 838 (8th Cir. 2015)); *see also In re Aceto Corp. Sec. Litig.*, No. 18-2425, 2019 WL 2606745, 2019 U.S. Dist. LEXIS 131675, at *12 (E.D.N.Y. 2019) (describing the assumption "that because a problem [with internal controls] was disclosed in November, defendants must have known of the problem in August" as "a classic example of 'fraud by hindsight' insufficient to support a 10(b) claim" (citing *Novak*, 216 F.3d at 309)); *In re Electronics for Imaging Inc. Sec. Litig.*, No. 17-5992, 2019 WL 397981, 2019 U.S. Dist. LEXIS 15795, at *22-23 (D.N.J. Jan. 31, 2019) ("The Complaint alleges absolutely no corroborative facts—let alone 'strong circumstantial evidence'—to support the inference that Defendants lied about the performance or the depth of their review. As such, this allegation amounts to nothing more than pure conjecture"); *In re Longtop Fin. Techs. Ltd. Secs. Litig.*, 939 F. Supp. 2d 360, 388 (S.D.N.Y. 2013).  And even assuming that Defendants "breached some oversight duty set forth in the COSO framework, Section 10(b) and Rule 10b-5 do not protect investors from mismanagement.  Negligence alone is not sufficient to support a strong inference of scienter." *Johnson*, 2020 U.S. Dist. LEXIS 150355, at *14-15; *see also Hertz Global Holdings*, 905 F.3d at 117-18.

Connor "does not point to any allegations in the Amended Complaint that demonstrate Defendants' knowledge of the violations; instead, [he] posits that Defendants' disregard [of control deficiencies] were so obvious that they must have been

aware of the wrongs.  Such conclusory, and indeed, insufficient, allegations cannot raise

an inference of scienter on the part of the Individual Defendants."  *Nat'l Junior

Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 557 (D.N.J. 2010).

When, as here, plaintiffs assert "circumstantial evidence of intent or recklessness" to

establish scienter, stronger circumstantial evidence than normal is required.  *Id.* at 553

(quoting *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 285 (D.N.J. 2007)).  Such

allegations must "present clear facts verifying plaintiff's deductions with respect to

defendant's state of mind."  *Id.*; *see also Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir.

2001) ("temporal proximity between the last favorable statements and the bad news,"

without more, is not sufficient to show false statements were made with "deliberate

recklessness").[4]

Given Defendants' "personal participation in designing and evaluating the

internal controls," the idea that they could have known something was amiss is not far-

fetched, *see Dobina*, 909 F. Supp. 2d at 246, but merely assuming that to be the case is

---

[4]       Connor alleges that information showing Defendants acted knowingly or with reckless
disregard for the truth "is peculiarly within Defendants' knowledge and control" since the Individual
Defendants had knowledge about the Company's internal affairs.  (Am. Compl. ¶ 82.)  But "[e]ven
accepting that the stringent pleading requirements applicable to Rule 10b-5 actions should be
'relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or
control," the Court "cannot credit factual allegations that do not rise above the speculative level."
*City of Cambridge*, 908 F.3d at 883.  A relaxation of these standards is not a license to "establish
fraud through the very sort of speculative fraud by hindsight that the PSLRA was intended to
eliminate."  *Id.* (cleaned up) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198.
225 (3d Cir. 2002)); *see also Nat'l Junior Baseball League*, 720 F. Supp. 2d at 547 n.26.
       In any event, "even under a more relaxed application of [Rule 9(b)], plaintiffs must
accompany such an allegation with a statement of facts upon which their allegation is based.
*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992)( a "boilerplate allegation that plaintiffs
believe the necessary information 'lies in defendants' exclusions control'" is insufficient under Rule
9(b)).  "To avoid dismissal in these circumstances, a complaint must delineate at least the nature and
scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with
particularity."  *Id.*; *see also Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319-20 (3d Cir. 1997).  Connor
has not done so here.

not enough.  *See City of Warren*, 70 F.4th at 693 ("The fraud-by-hindsight prohibition has its greatest potency in the context of otherwise deficient allegations of scienter"). Without more specific factual allegations, Connor contends only that Defendants "signed a SOX certification attesting to the accuracy of an SEC filing that turned out to be materially false."  *See Hertz Global Holdings*, 905 F.3d at 118.

Treating Connor's allegations as sufficient would allow plaintiffs to always speculate that control deficiencies missed initially but discovered later were within company knowledge from the start.  Accordingly, some allegation "that the defendant knew he was signing a false SEC filing or recklessly disregarded inaccuracies" is needed.  *Id.*  Reasoning otherwise would equate simple or "inexcusable negligence" with recklessness, in contravention of Third Circuit precedent.  *See Belmont*, 708 F.3d at 493.  Connor alleges Defendants knew or had access to information contradicting their statements, but he does not do so "specifically."  *See In re Campbell Soup Co Sec. Litig.*, 145 F. Supp. 2d at 599; *see also Doshi*, 823 F.3d at 1044 (a contention that "[h]ad the defendants properly used the COSO framework as they claimed, they would have known about the accounting errors alleged herein . . . cannot give rise to a strong inference of scienter").  Without offering any facts to support his theory that the control deficiencies were so obvious that a "good faith evaluation" could not have missed them, Connor fails to adequately allege a strong inference of scienter.

VII

Defendants also believe Connor has not adequately alleged loss causation.  To do so, he must allege that the Defendants' acts or omissions "caused the loss" for which he seeks to recover damages.  15 U.S.C. § 78u-4(b)(4).  Specifically, he must show that

24

Defendants "misrepresented or omitted the very facts that were a substantial factor" in causing the economic loss.  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 426 (3d Cir. 2007); *see also McDermid*, 520 F. Supp. 3d at 665.  Allegations of loss causation are not subject to the PSLRA's or Rule 9(b)'s heightened pleading requirements.  *McDermid*, 520 F. Supp. 3d at 665 (quotation omitted).  Instead, ordinary pleading rules apply; plaintiffs need only allege "a sufficient causal nexus between the loss and the alleged misrepresentation."  *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 883 (3d Cir. 2000) (quotation omitted).  And "[w]hether the plaintiff has proven [loss] causation is usually reserved for the trier of fact."  *Id.* at 884; *see also McCabe*, 494 F.3d 427 n.4.

Defendants argue Unisys's announcement of its internal investigation into its controls and procedures does not constitute a "corrective disclosure."  (Defs.' Mem. 31-33.)  A corrective disclosure is "a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud." *Meyer v. Greene*, 710 F.3d 1189, 1196 (11th Cir. 2013).  While "the announcement of an investigation, standing alone, does not qualify as a corrective disclosure, it can form the basis of a viable loss causation theory if the complaint also alleges a subsequent corrective disclosure by the defendant."  *Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 425 (E.D. Pa. 2019) (cleaned up) (quoting *Lloyd v. CVB Fin. Co.*, 811 F.3d 1200, 1209-10 (9th Cir. 2016)); *see also Meyer*, 710 F.3d at 1201-02 & n.13 ("We merely hold that the disclosure of an SEC investigation, *standing alone and without any subsequent disclosure of actual wrongdoing*, does . . . not qualify as a corrective disclosure" (emphasis added)).

In such an instance, "no stock price drop need accompany the subsequent corrective disclosure." *Rabkin v. Lion Biotechs., Inc.*, No. 17-2086, 2018 WL 905862, 2018 U.S. Dist. LEXIS 25326, at *45 (N.D. Cal. Feb. 15, 2018).  (alteration omitted) (quoting *Rok v. Identiv, Inc.*, No. 15-5775, 2017 WL 35496, 2017 U.S. Dist. LEXIS 1019, at *56 (N.D. Cal. Jan. 14, 2017).  "[A]ny other rule would allow a defendant to escape liability by first announcing a government investigation and then waiting until the market reacted before revealing that prior representations under investigation were false." *Lloyd*, 811 F.3d at 1210.[5]

Here, Connor alleges Defendants misrepresented the effectiveness of Unisys's internal controls over financial reporting and its disclosure controls and procedures. *See, e.g.*, (Am. Compl. ¶¶ 40, 42.)  When Unisys announced it was conducting an internal investigation into its disclosure controls and procedures, Unisys's stock price fell by 48% the following day.  (*Id.* ¶¶ 58-59.)  Had the truth been revealed earlier, Unisys's stock price would not have been inflated above its "true value."  (*Id.* ¶ 84.) The investigation revealed material weaknesses in Unisys's internal controls and disclosure controls and procedures, and Unisys accordingly had to amend several filings to state that these controls were not effective.  (*Id.* ¶¶ 60, 62.)  The announcement of the internal investigation "concerned the subject matter of the alleged fraud and eventually led to a restatement." *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 485-86 (S.D.N.Y. 2008).  Had Connor adequately alleged falsity and scienter, these allegations

---

[5]     Some of these cases discuss government investigations rather than internal investigations but refer to each other interchangeably. *See, e.g.*, *Lloyd*, 811 F.3d at 1210 (discussing government investigations); *Rok*, 2017 U.S. Dist. LEXIS 1019, at *54-62 (discussing internal investigations and relying on *Lloyd*).  And the *Lloyd* court's discussion of when government investigations constitute corrective disclosures built on a prior ruling that involved internal investigations. *See Loos v. Immersion Corp.*, 762 F.3d 880, 888-90 & n.3 (9th Cir. 2014).

would plausibly establish loss causation. *See Lloyd*, 811 F.3d at 1203 (the announcement of an investigation into an alleged misrepresentation, "coupled with a subsequent revelation of the inaccuracy of that misrepresentation, can serve as a corrective disclosure").[6]

## VIII

Connor does not allege an unreasonable theory, but he also does not adequately allege it with the particularity the PSLRA requires. "In most instances where plaintiffs fail to plead fraud with particularity—and especially in cases where plaintiffs may be able to supplement their complaints with additional factual content after discovery—district courts should dismiss the fraud claim 'with leave to amend the deficient pleading.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 779 (3d Cir. 2018) (quoting 5A Charles Alan Wright et al., *Federal Practice & Procedure* § 1300 (3d ed. 2017)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997); *Chubb*, 394 F.3d at 165. The Court dismisses Connor's claims without prejudice.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

---

[6]     Violations of Section 20(a) must be premised on an independent violation of another securities law. *Avaya*, 564 F.3d at 252, 280; *Chubb*, 394 F.3d at 142. Because Connor fails to adequately allege a securities fraud claim under Section 10(b) and Rule 10b-5, he cannot state a claim against the Individual Defendants under Section 20(a).